## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

| | | |
|---|---|---|
| CARRIE WELLEIN | : | |
| 56 Glyndon Gate Way | : | |
| Reisterstown, MD 21136 | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | Civil No. _____ |
| | : | |
| JERRY O. BATLEY, JR., M.D. | : | |
| 333 E. Plainview Road | : | |
| Lovington, NM  88260 | : | |
| | : | |
| Defendant. | : | |

_____

## COMPLAINT

For her Complaint against **Jerry O. Batley, Jr., M.D.**, Plaintiff **Carrie Wellein**, a citizen of Maryland, by her undersigned attorneys, upon knowledge as to her own actions and dealings, and upon information and belief as to Defendant and his actions, alleges as follows:

## NATURE OF THE ACTION

1.     This is a case of "revenge porn" by a successful general surgeon who, when outside the operating room, preys on women half his age, secretly and illegally recording them in intimate moments with him without their consent that he then uses against them.

2.     Plaintiff became involved in a relationship with Batley after he initially contacted her online, ostensibly to purchase her artwork. They began seeing each other on a regular basis when he was in Maryland and the relationship became more serious.

3.     Unbeknownst to Plaintiff at the time, on a number of occasions when Plaintiff was alone with Batley in hotel rooms in Maryland and Pennsylvania, Batley secretly recorded video of Plaintiff unclothed as well as Plaintiff and Batley engaging in intimate sexual activity.

4.      During the course of their relationship, Batley became more demanding and controlling, making Plaintiff increasingly uncomfortable and unhappy in the relationship. Plaintiff was also interested in pursuing a relationship with someone else she had been seeing.

5.      As a result, Plaintiff informed Batley in or about October 2018 that she wanted to end the relationship, although she was willing to remain friends with him.

6.      Unhappy with Plaintiff's decision and his loss of control, Batley reacted with great hostility. In response, Batley sent packages to Plaintiff's family, her boyfriend, and her boyfriend's roommate containing photographs of Plaintiff naked that she had shared with him in confidence as well as footage from Batley's secret recordings of Plaintiff and Batley engaged in intimate sexual activity. Batley also included a letter in each package containing false and defamatory statements about Plaintiff and captioned some of the photographs with defamatory and embarrassing statements that he falsely attributed to Plaintiff.

7.      As a result of Batley's outrageous and criminal actions, Plaintiff has sustained serious injury to her reputation, her privacy, her relationships with her family members, and her mental and emotional well-being. She was devastated and felt violated upon learning that Batley had been secretly recording her in intimate moments with him.

8.      Batley was arrested and prosecuted in Pennsylvania for his acts of revenge porn, for which he pled *nolo contendere* and was sentenced to probation and required to pay a fine.

9.      The purpose of this action is to compensate Plaintiff for the serious harm that Batley caused her and to hold him accountable for his outrageous, criminal, and wrongful conduct.

## **PARTIES**

10.     Plaintiff Carrie Wellein is a citizen of Maryland. She resides at 56 Glyndon Gate Way, in Reisterstown, Maryland. She is 31 years old.

11.     Defendant Jerry O. Batley, Jr., M.D. is a general surgeon. He is 60 years old. On information and belief, he is a citizen of New Mexico and resides at 333 E. Plainview Road, Lovington, New Mexico 88260. On information and belief, his place of work is located at 1600 North Main Street, in Lovington, New Mexico.

12.     Batley is a former citizen of the State of Maryland, where he used to reside and practice medicine as a licensed physician. He has three children who reside in Maryland from a marriage that ended in divorce. On information and belief, Batley continues to pay alimony and child support to his ex-wife, who resides in Maryland.

13.     On information and belief, Batley traveled to Maryland on a monthly basis to visit his children and to see Plaintiff during the time period at issue. On information and belief, Batley has continued to travel to Maryland on a monthly basis to visit his children and other women in the area with whom he is involved.

14.     On information and belief, Batley is married to Felisha Hedge, who resides in Baltimore, Maryland. Several months ago, Batley's Facebook page stated: "Married to Felisha Hedge." Hedge's Facebook page stated that she was "[m]arried to Jerry Batley" on August 12, 2020. On information and belief, Batley regularly comes to Maryland to visit and live with Hedge.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over all claims asserted in this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy in this action exceeds $75,000, and Plaintiff and Defendant are citizens of different States.

16.     This Court has personal jurisdiction over Defendant Batley pursuant to Md. Code, Cts. & Jud. Proc. § 6-103(b)(3) because Batley caused tortious injury in this State by an act or omission in this State.

17.     This Court also has personal jurisdiction over Defendant Batley pursuant to Md. Code, Cts. & Jud. Proc. § 6-103(b)(4) because Batley caused tortious injury in this State or outside this State by an act or omission outside the State and he has engaged in a persistent course of conduct in the State.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(2) and (3) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and defendant is subject to the Court's personal jurisdiction with respect to this action in this district.

## **STATEMENT OF FACTS**

### Batley Contacts Plaintiff

19.     Plaintiff is an artist and has posted drawings for sale on various websites.

20.     In or about June 2016, Batley contacted Plaintiff via social media about purchasing some of her artwork that was posted online.

21.     At the time, Plaintiff was living at her mother's house, with her mother and brother, in Adams County, Pennsylvania.

22.     Following some back and forth communication via social media, Batley asked Plaintiff to dinner in Baltimore, Maryland.

23.     In or about the end of 2017, Plaintiff met Batley at the Four Seasons Hotel in Baltimore where he was staying, and had dinner with him in Baltimore.

24.     Thereafter, Plaintiff and Batley began seeing each other on a monthly basis, when Batley was in Maryland to visit his children or for other reasons.

25.     At the time, Batley was in his late 50s and Plaintiff was in her late 20s.

26.     They exchanged messages via text and social media, such as Facebook Messenger,

on a regular basis.

## Batley Secretly Records Intimate Images of Plaintiff

27.     As the relationship became more serious, Batley invited Plaintiff to stay with him in his hotel room when he was in town, in Maryland and southern Pennsylvania, near where Plaintiff resided at the time.

28.     During these hotel-room stays, which occurred approximately every month or two, Batley and Plaintiff sometimes engaged in intimate acts.

29.     Unbeknownst to Plaintiff at the time, Batley installed secret video cameras in his hotel rooms before her arrival. Following her arrival, Batley secretly recorded video of Plaintiff while she was unclothed in his hotel room and while they were engaged in sexual relations.

30.     In or about the summer of 2018, Batley secretly recorded video of Plaintiff naked and engaged in intimate sexual activity with Batley in his hotel room at the Four Seasons Hotel in Baltimore.

31.     Batley also secretly recorded video of Plaintiff unclothed and engaged in sexual relations with him in his hotel rooms at the Courtyard by Marriott Hotel in Gettysburg, Pennsylvania, the Hampton Inn in Hanover, Pennsylvania, the Days Inn in Gettysburg, Pennsylvania, and a Motel 6 in Pennsylvania.

32.     These video recordings were made by Batley without Plaintiff's knowledge or consent.

33.     During one such visit in 2018 to Batley's hotel room, at the Hampton Inn in Hanover, Pennsylvania, Plaintiff indicated that she was not interested in having sex with him that evening.

34.     In response, Batley physically attacked Plaintiff, shoving her onto his bed, and

squeezing her face with great intensity, resulting in red marks on her body.

<u>Plaintiff Shares Private Photos</u>

35.     At various points during their relationship while they were physically apart, Batley said that he missed Plaintiff and asked her to text him intimate pictures of her naked body.

36.     On one or more occasions, he made specific requests for pictures of certain areas of Plaintiff's body.

37.     Although Plaintiff was uncomfortable with these requests from Batley and did not like taking and sharing the pictures he wanted, she agreed to take and send him these pictures, with the understanding from Batley that these pictures were private and were not to be shared with anyone else.

38.     Plaintiff trusted Batley when he promised her that he would not show or share these intimate photos with anyone else.

<u>Plaintiff Decides to End Relationship</u>

39.     During their time together, Plaintiff became increasingly unhappy with Batley's controlling, threatening, and manipulative nature.

40.     Among other things, at various times during their time together, Batley threatened Plaintiff and would stalk her and her brother at Plaintiff's mother's residence in Pennsylvania.

41.     In the fall of 2018, Plaintiff decided that she wanted to end her relationship with Batley. She was unhappy with the relationship and, in particular, Batley's increasingly controlling and manipulative actions toward her, which made her increasingly uncomfortable and unhappy.

42.     In addition, she wanted to pursue a relationship with a friend that she had been dating who was her age and lived in the area. Her friend ("Boyfriend") lived at the time in Baltimore County, Maryland with a roommate who was a mutual friend of Plaintiff and Boyfriend.

43.     In or about early October 2018, Plaintiff informed Batley that she wanted to stop seeing him.

44.     Batley reacted with great hostility when Plaintiff informed him that she wanted to end their relationship. As a result, Plaintiff became fearful that he might attack or hurt her physically.

45.     Batley promised Plaintiff that he would not take any action against her if she texted him a picture of her vagina, which he agreed to keep confidential.

46.     Although Plaintiff did not like taking these pictures or sharing them with others, Plaintiff agreed to send him the picture in return for his promise to not do anything further toward her.

<u>Batley Sends Intimate Photos of Plaintiff to her Family and Friends</u>

47.     Despite Batley's promise, on or about October 16, 2018, Batley sent a package to Plaintiff's mother's home in Adams County, Pennsylvania. The package was addressed to Plaintiff's brother, who was living with Plaintiff and their mother at their mother's home at the time.

48.     Although Batley used the alias "Bill Blass" in the return address listed on the envelope, the content of the package, statements made in the package, handwriting on the envelope and in the package, and his subsequent written admissions make clear that Batley was the sender.

49.     The return address listed was in Atlantic City, New Jersey, at an address that Batley visited regularly.

50.     The package, which arrived on or about October 18, 2018, contained a letter written to Plaintiff's brother that Batley asked to be given to Plaintiff's Boyfriend.

51.     Batley's letter in the package contained numerous false and defamatory statements

about Plaintiff.

52.     In the letter, Batley falsely stated that Plaintiff had "stolen and extorted thousands of dollars" from him.

53.     In fact, Plaintiff never stole or extorted any money from Batley. Any money that Batley gave to Plaintiff was in the form of a gift that he offered and insisted that she take.

54.     Batley also falsely stated that Plaintiff had "coerced $6,000 cash from me which she said was for [her] brother [] to close on the house."

55.     When Plaintiff mentioned that she was concerned about her brother's ability to make a down-payment on a house that he was trying to buy, Batley, on his own initiative, sent Plaintiff $6,000 as a gift to help her and her brother.

56.     Batley also falsely stated that he was "surprised [Plaintiff] doesn't have a jail record" and that he has "plenty of dirt on her to press charges."

57.     In fact, Batley knew this was a lie, that Plaintiff had not engaged in any criminal conduct, and that he did not have *any* "dirt" on her.

58.     These statements and others contained in the letter were false and defamatory.

59.     Accompanying the letter were numerous naked photographs of Plaintiff.

60.     Some of these photographs, which were taken by Batley using hidden cameras in his hotel rooms, depicted Plaintiff engaged in sexual activity with Batley, including oral sex and sexual intercourse.

61.     In assembling the contents of the package, Batley attempted to redact his face from the photos of him engaging in sexual activity with Plaintiff so that only Plaintiff was identifiable.

62.     Included in the package were naked photographs of Plaintiff that Batley had asked Plaintiff to send him with the agreement that they were private and would not be shared with

others.

63.     In the photographs contained in the package, Batley added cartoon-like captions purporting to recite sexual dialog between Batley and Plaintiff, disparage Plaintiff's Boyfriend, and allegedly recount Plaintiff's sexual thoughts at the time.

64.     The statements in these captions, which Batley made up, were false and defamatory, depicted Plaintiff in a false light, and invaded her privacy.

65.     The captions contained false, outrageous, vulgar statements about Plaintiff and her Boyfriend.

66.     Shortly after receiving Batley's package and viewing its contents, Plaintiff's brother and mother called Plaintiff to let her know that they had received this package and were very upset over the contents.

67.     When Plaintiff learned of the package from her mother and brother, she became very upset. She was crying, shaking, and hysterical. She was so upset, red, shaking, and out of control that her brother wanted to take her to the hospital.

68.     At approximately the same time, Batley also sent similar packages to Plaintiff's Boyfriend and her Boyfriend's roommate at their apartment in Baltimore County, Maryland.

69.     The package to Plaintiff's Boyfriend and/or Plaintiff's Boyfriend's roommate contained a letter from Batley to Plaintiff's Boyfriend with false and defamatory statements about Plaintiff.

70.     Batley falsely stated that he and Plaintiff had "hook[ed] up several times in *your* apartment" and it was Boyfriend's "apartment [they] were violating."

71.     In fact, Batley and Plaintiff had never "hooked up" in, "violated," or even so much as kissed in Plaintiff's Boyfriend's apartment.

72.     Batley also falsely stated that "cartoons at the back of the packet are offensive but were [Plaintiff's] actual words." These "cartoons" consisted of photos of Plaintiff naked and engaged in intimate sexual activity with Batley to which Batley added captions containing numerous false, defamatory, and disgusting comments that Plaintiff never said.

73.     These and other false statements in the letter were defamatory.

74.     In the letter, Batley also admitted that he swore not to tell Plaintiff's Boyfriend about their relationship, but nevertheless violated that sworn promise in the letter by attempting to inform him, in misleading and inaccurate fashion, about Batley and Plaintiff's relationship.

75.     The packages to Plaintiff's Boyfriend and her Boyfriend's roommate, like the package to Plaintiff's brother, contained naked photographs of Plaintiff that, unbeknownst to Plaintiff at the time, Batley took with hidden cameras in his hotel rooms.

76.     These photographs depicted Plaintiff naked and engaging in various forms of sexual activity with Batley in his hotel room.

77.     As with the photographs sent to Plaintiff's brother, in the photographs sent to Plaintiff's Boyfriend and her Boyfriend's roommate, Batley added cartoon-like captions purporting to recite sexual dialog between Batley and Plaintiff, and recount Plaintiff's sexual thoughts at the time.

78.     The statements in these captions, which Batley made up, were false and defamatory, depicted Plaintiff in a false light, and invaded her privacy.

<u>Batley's Actions Cause Plaintiff Severe Emotional Distress</u>

79.     Plaintiff was devastated when she learned of the packages that Batley sent to Plaintiff's brother, Boyfriend, and Boyfriend's roommate, the contents of which were also seen by her mother.

80.     She suffered extreme emotional distress and anxiety as a result of Batley's sending pictures of Plaintiff naked and engaged in various forms of sexual activity with him.

81.     Plaintiff was horrified, felt violated, and suffered severe emotional distress upon discovering that Batley had secretly video-recorded her in Batley's hotel room naked and engaging in various forms of sexual activity with him.

82.     She was extremely distraught and felt violated by Batley's dissemination of images from those recordings to her brother, her Boyfriend, and her Boyfriend's roommate as well as others who saw these images, including her mother.

83.     Upon seeing the contents of Batley's package to Plaintiff's brother, Plaintiff's family was extremely upset with Plaintiff, causing additional emotional distress, mental anguish, and trauma for Plaintiff.

84.     Plaintiff felt severely embarrassed and ashamed upon learning of and seeing the packages that Batley had sent to her family, her Boyfriend, and her Boyfriend's roommate.

85.     Plaintiff remains extremely distraught and upset at the possibility that Batley still has copies of these hidden recordings, and naked pictures of her, and could disseminate them to others or post them on the Internet, if he hasn't already.

<u>Batley Admits to Hurting Plaintiff</u>

86.     Following the receipt of Batley's packages by Plaintiff's brother, Boyfriend, and Boyfriend's roommate, on or about October 21, 2018, Batley exchanged text messages with Plaintiff in which he admitted that he was the sender of the packages.

87.     Batley stated: "In a heated moment what I intended only for [Boyfriend] to see caused a lot more damage than what I could have ever anticipated. There's no excuse. I feel horrible. I can't imagine what you and your family are going through. … You will never know my

regret and horrible sadness for hurting you."

88.     He further stated: "[W]hen you cut me off I was hurt and I retaliated in a childish outburst. I regret that now."

89.     He acknowledged that sending the packages caused "permanent damage." He said: "[W]e can't undo or repair. I'm sorry. U can never trust me now. U would never want to see me or hear my voice. I fckd it up good."

90.     He said: "Today I failed miserably as a human being. I hurt someone I loved very much."

91.     Plaintiff responded, "Today is the worst day of my life."

92.     Nevertheless, Batley threatened Plaintiff if she ever pursued legal action against him for the harm that he admits he caused her. He said, "I know u are not vengeful but as your family & friends try to talk u into doing something legal against me, I have made sure that I'm clean but I would have a ton against u."

93.     Batley also threatened to shoot himself in the front yard of Plaintiff's mother's home in Adams County, Pennsylvania, where Plaintiff was residing at the time.

<u>Plaintiff Presses Criminal Charges</u>

94.     On or about October 22, 2018, Plaintiff was visiting her Boyfriend's apartment in Baltimore County, Maryland when a package from Batley arrived that was similar to the package that he had sent to Plaintiff's brother at Plaintiff's mother's residence in Adams County, Pennsylvania.

95.     Plaintiff was very upset and called the Baltimore County Police Department. She wanted to press charges against Batley for sending the packages containing nude photos of Plaintiff without her consent and for taking and distributing intimate photos of Plaintiff and Batley having

sex with the use of hidden cameras and without her knowledge and consent.

96.     The Baltimore County Police met with Plaintiff at her Boyfriend's residence and subsequently prepared an Incident Report, naming Batley as the perpetrator.

97.     Plaintiff also pressed charges against Batley with the police in Adams County, Pennsylvania.

98.     Plaintiff secured protection from abuse orders against Batley from courts in Maryland and Pennsylvania.

99.     On or about January 16, 2019, criminal proceedings were initiated against Batley in the Court of Common Pleas of Adams County, Pennsylvania.

100.    Thereafter, Batley was arrested.

101.    Batley was charged with unlawful dissemination of intimate images and multiple counts of harassment.

<u>Batley Pleads No Contest</u>

102.    On January 21, 2020, Batley pled *nolo contendere* to the charge of unlawful dissemination of intimate images, and was sentenced to 24 months of probation and fined $600, plus various court fees. Batley was also ordered to complete a mental health evaluation and treatment program as well as an anger management program.

103.    The court ordered Batley not to have contact with Plaintiff or any member of her immediate family and not to post any comments about or referring to Plaintiff or any member of her family on any social media.

<u>Impact on Plaintiff</u>

104.    Batley's secret video recording of Plaintiff, without her consent, while they were engaged in sexual activity, and his dissemination of images from these recordings, along with

naked pictures of her, to Plaintiff's family members, Plaintiff's Boyfriend, Plaintiff's Boyfriend's roommate, and possibly others has caused Plaintiff severe and lasting emotional distress and mental anguish that has affected her overall well-being.

105.    As a result of Batley's actions, Plaintiff suffers from adjustment disorder, anxiety, stress, and depression.

106.    Plaintiff has experienced nightmares, paranoia, and unhappiness resulting from Batley's actions toward her.

107.    This has greatly affected Plaintiff's quality of life, her ability to function in society, and her relationships with family members and others.

108.    Plaintiff is also fearful that Batley may attack her physically or post naked or intimate photos of her online in the future, if he hasn't already.

## COUNT 1

### Intrusion

109.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 108 as if set forth in this Count.

110.    Batley intentionally placed and used hidden cameras in his hotel rooms in Maryland and Pennsylvania for the purpose of video recording Plaintiff while she was naked and while Plaintiff and Batley engaged in intimate sexual relations.

111.    These cameras were placed and these recordings were made without Plaintiff's knowledge or consent.

112.    Batley's placement and use of the hidden cameras constituted an unreasonable and intentional intrusion upon the seclusion or private affairs of Plaintiff.

113.    Batley intentionally placed and used the hidden cameras to invade Plaintiff's

14

privacy and intrude upon her private affairs.

114.    A reasonable person would find Batley's actions to be highly offensive.

115.    Batley's actions occurred in his hotel room where Plaintiff had a reasonable expectation of privacy that she was not being recorded while she was naked and engaged in sexual relations with Batley.

116.    As a result of Batley's intrusion, Plaintiff has suffered severe emotional distress, mental anguish, and other damage.

## COUNT 2

**Unlawful Dissemination of Intimate Images in violation of  42 Pa. C.S.A. § 8316.1**

117.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 116 as if set forth in this Count.

118.    Batley disseminated numerous images of Plaintiff in a state of nudity, including images of her engaged in sexual conduct with him.

119.    Batley disseminated these images with malice and an intention to harm Plaintiff.

120.    These images were disseminated by Batley to Plaintiff's family, Plaintiff's Boyfriend, and her Boyfriend's roommate, among other possible recipients.

121.    Batley disseminated these images to Plaintiff's family members in Pennsylvania and Plaintiff's Boyfriend and Boyfriend's roommate in Maryland, with the intent to harass, annoy, or alarm Plaintiff, who was a former sexual or intimate partner of his.

122.    Plaintiff did not consent to Batley's dissemination of these images.

123.    With respect to intimate images that Plaintiff provided to Batley at his request, these images were provided to Batley with the agreement that Batley would not share them with or disseminate them to anyone else.

124.    Plaintiff did not consent to Batley's recording of images that were taken, without Plaintiff's knowledge, in Batley's hotel rooms in Pennsylvania and Maryland using hidden cameras of which Plaintiff was not aware.

125.    At the time that Batley disseminated these images, Plaintiff resided at her mother's residence in Adams County, Pennsylvania.

126.    After being charged with violation of 18 Pa. C.S.A. § 3131, unlawful dissemination of intimate image, Batley pleaded *nolo contendere* (*i.e.,* he did not contest the charges against him).

127.    As a result of Batley's dissemination of these images, Plaintiff has suffered long-term, serious, and permanent injury to her reputation as well as severe emotional distress, mental anguish, and lasting harm to her overall well-being.

128.    Given the serious nature of Batley's actions, his maliciousness, and the lasting harm that his actions have caused, the Court should award treble damages, along with reasonable attorney fees, court costs, and additional relief the Court deems necessary and proper, pursuant to 42 Pa. C.S.A. § 8316.1(c).

129.    Such additional relief would include an injunction requiring Batley to turn over and/or delete any copies of nude or intimate photos and video of Plaintiff that are still in his possession or that have been stored or posted elsewhere in his possession, custody, or control.

## COUNT 3

**Visual Surveillance with Prurient Interest, in violation of Md. Code, Crim. Law § 3-902(c)**

130.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 129 as if set forth in this Count.

131.    Batley conducted visual surveillance of Plaintiff, as defined in Md. Code, Crim.

16

Law § 3-902(a)(6), by engaging in deliberate, surreptitious observation of Plaintiff by the use of hidden cameras in hotel rooms in Maryland and Pennsylvania to secretly video record Plaintiff naked and/or engaged in sexual activity with Batley.

132.    Batley conducted this visual surveillance with prurient intent in a private place—namely, his hotel room—without Plaintiff's knowledge or consent.

133.    As a result of Batley's secret recording of Plaintiff, Plaintiff has suffered severe emotional distress, mental anguish, and lasting harm to her overall well-being.

## COUNT 4

### Breach of Confidentiality Agreement

134.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 133 as if set forth in this Count.

135.    During their relationship, Batley asked Plaintiff to take and send him intimate photos of Plaintiff appearing unclothed or semi-clothed.

136.    Although she did not like taking or sharing such photos, Plaintiff agreed to provide the photos to Batley as he requested in return for Batley's agreement that he would keep these photos confidential and would not show or share them with anyone else.

137.    In return for Batley's agreement to keep these photos confidential and not show or share them with anyone else, Plaintiff texted Batley the photos he requested.

138.    Plaintiff satisfied all conditions precedent for Batley's agreement to keep the photos confidential and not show or share them with anyone else.

139.    Batley materially breached his agreement to keep the photos confidential when he printed out copies and sent them to Plaintiff's family members, Plaintiff's Boyfriend, and Plaintiff's Boyfriend's roommate.

140.     After Plaintiff informed Batley that she wanted to stop seeing him, Batley promised that he would not take any action against Plaintiff if she sent him an intimate photo of her.

141.     Although Plaintiff then sent Batley the photo he requested, Batley nevertheless sent the packages to Plaintiff's brother, Boyfriend, and Boyfriend's roommate, in breach of his agreement not to take any action against her.

142.     As a result of Batley's breach of the confidentiality agreement and agreement not to take any action against her, Plaintiff has sustained damages that were foreseeable at the time of Batley and Plaintiff's agreement.

## COUNT 5

### Promissory Estoppel/Detrimental Reliance

143.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 142 as if set forth in this Count.

144.     During their relationship, Batley asked Plaintiff to take and send him intimate photos of Plaintiff appearing unclothed or semi-clothed.

145.     Although she did not like taking or sharing such photos, Plaintiff agreed to provide the photos to Batley as he requested in return for Batley's clear and definite promise that he would keep these photos confidential and would not show or share them with anyone else.

146.     In making his promise, Batley reasonably expected that his promise would induce Plaintiff to send him the intimate photos of her that he requested and that she was reluctant to send him.

147.     Batley's promise to keep the photos confidential and not show or share them with anyone else induced Plaintiff to send Batley the photos he requested.

148.     Batley materially breached his promise to keep the photos confidential when he

printed out copies and sent them to Plaintiff's family members, Plaintiff's Boyfriend, and Plaintiff's Boyfriend's roommate.

149.     After Plaintiff informed Batley that she wanted to stop seeing him, Batley promised that he would not take any action against Plaintiff if she sent him an intimate photo of her.

150.     Although Plaintiff then sent Batley the photo he requested, Batley nevertheless sent the packages to Plaintiff's brother, Boyfriend, and Boyfriend's roommate, in breach of his promise not to take any action against her.

151.     Batley's breach of his promises caused Plaintiff to suffer damages that were foreseeable at the time of Batley's promise that induced Plaintiff's reliance.

## COUNT 6

### Intentional Infliction of Emotional Distress

152.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 151 as if set forth in this Count.

153.     Batley intentionally engaged in outrageous conduct to cause harm to Plaintiff.

154.     Batley intentionally video recorded Plaintiff, without her knowledge or consent, using hidden cameras while she was naked in his hotel rooms and while she was engaged in intimate sexual activity with him.

155.     Batley sent packages to Plaintiff's family members, Plaintiff's Boyfriend, and Plaintiff's Boyfriend's roommate containing photos depicting Plaintiff unclothed and engaged in intimate sexual activity with Batley that he took with the hidden cameras as well as photos that Plaintiff had provided to Batley with the understanding that they would be kept confidential and not shown or shared with anyone.

156.     Batley knew that doing this would cause Plaintiff severe emotional distress.

157.     Batley sent these packages, invaded Plaintiff's privacy, broke his promise to keep the photos provided by Plaintiff confidential, captioned photos in the packages with false and defamatory statements about Plaintiff, and included a letter containing false and defamatory statements about Plaintiff to intentionally inflict Plaintiff with severe emotional distress.

158.     Batley sent these packages to Plaintiff's family members to humiliate her in front of her family and to cause harm to her relationship with her family.

159.     Batley sent these packages to Plaintiff's Boyfriend and Boyfriend's roommate to humiliate her and cause harm to her relationship with her Boyfriend and her Boyfriend's roommate, who was a friend of Plaintiff.

160.     Batley's actions were extreme and outrageous.

161.     Batley's actions caused Plaintiff severe emotional distress, mental anguish, and harm to her overall well-being, all of which continue to this day.

162.     Batley's actions were done with actual and common-law malice toward Plaintiff, with the goal of inflicting Plaintiff with severe emotional distress.


For these reasons, Plaintiff Carrie Wellein demands judgment as follows:

1.     On Counts 1-6, compensatory damages in an amount to be determined at trial and in excess of $2.5 million, plus interest, costs, and reasonable attorneys' fees;

2.     On Count 2, a trebling of compensatory damages awarded, plus reasonable attorney fees, court costs, and additional relief, pursuant to 42 Pa. C.S.A. § 8316.1(c);

3.     On Count 3, reasonable attorney fees, pursuant to Md. Code, Crim. Law §

3-902(e)(2);

4.     On Counts 2 and 3, enjoin Batley from further dissemination of any photos or video of Plaintiff and to return or destroy all photos and video in his possession, custody, or control, pursuant to 42 Pa. C.S.A. § 8316.1 and Md. Code, Crim. Law § 3-902(f);

5.     On Counts 1-6, punitive damages in an amount to be determined at trial and in excess of $2.5 million; and,

6.     Such other and further relief that the Court deems just and proper.

Plaintiff demands a jury trial on all matters triable to a jury.

Dated: February 2, 2021

Respectfully submitted,

*/s/David S. Wachen*
David S. Wachen (Bar No. 12790)
WACHEN LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121
Fax (301) 259-3846
david@wachenlaw.com

*Counsel for Plaintiff Carrie Wellein*

Of Counsel:
Jason Imler, Esq.
Mooney & Associates
230 York Street
Hanover, PA 17331
(717) 632-4656
Fax (717) 632-3612
jci@mooney4law.com

21